857 A.2d 1095

**DUAL INCORPORATED, et al.**

**v.**

**LOCKHEED MARTIN CORPORATION, et al.**

**No. 115, Sept. Term, 2003.**

Court of Appeals of Maryland.

Sept. 13, 2004.

152

154

**156**

Raymond D. Battocchi (Gabeler, Battocchi, Griggs & Powell, PLLC, McLean, VA; Alfred F. Belcuore, Montedonica, Belcuore & Tazzara, P.C., Washington, DC), all on brief, for Appellants.

Robert J. Mathias (Kenneth L. Thompson and Jeffrey E. Gordon, Piper Ridnick LLP, Baltimore), on brief, for Appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

On 1 October 2001, J. Frederick Dual, Jr. ("Dual"), purporting to act in the capacities of "President and sole shareholder" of Dual, Incorporated ("Dual, Inc."), filed a complaint in the Circuit Court for Baltimore City against Lockheed Martin Corporation and two of its subsidiaries (collectively "Lockheed"). In the complaint, Dual alleged various torts related to the terminations of two contracts: one between Dual, Inc. and Lockheed, and another between Dual, Inc. and the United States Air Force ("Air Force"). Dual, a non-lawyer, filed the complaint *pro se,* identifying both himself and Dual, Inc. as plaintiffs. At the time suit was filed, the corporate charter for Dual, Inc. was forfeit. This complaint, however, was never served on Lockheed.

One year later and after reviving Dual, Inc.'s corporate charter, Dual and Dual, Inc., now with counsel's assistance, filed an amended complaint modifying some of the previously pleaded counts and adding additional counts. After Lockheed was served with the amended complaint on 11 October 2002, it responded with a motion to dismiss based essentially on the statute of limitations. Lockheed's position was that: (a) all of the wrongful conduct alleged by Dual/Dual, Inc. was completed by no later than May–June 1999; (b) any complaint based thereon had to be filed by no later than June of 2002, under the applicable three year statute of limitations; (c) the original complaint was a nullity because Dual, Inc.'s corporate charter was forfeit at the time of filing and Dual improperly, both as a non-lawyer and otherwise, initiated the suit in a derivative or representational capacity; and (d) the amended complaint, filed after the June 2002 deadline, was time-barred. The Circuit Court agreed with Lockheed and dismissed the suit in its entirety, entering judgment in favor of Lockheed on 1 October 2003. Dual and Dual, Inc. appealed to the Court of Special Appeals. Before the intermediate appellate court

could consider the appeal, we, on our initiative, issued a writ of certiorari. We shall affirm the Circuit Court's judgment.

### I.

Based on his experiences as a Vietnam-era veteran of the United States Navy, Dual formed Dual, Inc. in 1983 to engage in the aircraft simulator business. Dual, Inc. was an attractive business partner because it was certified by the U.S. Small Business Administration as a "Section 8" minority-owned enterprise as a result of Dual's physical disability incurred during the war.

In 1994, Lockheed awarded a subcontract to Dual, Inc. to provide Lockheed with engineering designs and related support for its Johnson Space Center Science Engineering and Technology ("SEAT") contract with the National Aeronautics & Space Administration ("NASA"). Also in 1994, Dual, Inc. received a direct contract from the Air Force to develop a flight simulator to test the Air Force's Joint Surveillance Target Attack Radar System ("JSTARS").

For reasons that are not entirely clear on this record, Dual, Inc.'s Maryland corporate charter was forfeited on 2 October 1997. The charter was not revived until 25 July 2002.

The Air Force terminated the JSTARS contract "for cause" on 29 April 1999. Lockheed terminated Dual's SEAT subcontract on 17 May 1999. On 10 June 1999, the Air Force changed the basis of the termination of the JSTARS contract to "for the convenience of the government." Why these contracts were terminated animated the initiation of the present litigation.

Dual, Inc. and Dual alleged in the original complaint that in 1999 Lockheed engaged in a scheme to drive Dual, Inc. out of business in order to assume its employees, contracts, and client base, most notably in the latter two regards the JSTARS contract and the Air Force, respectively. To accomplish these objectives, it was alleged that Lockheed worked behind the scenes with Air Force officials to bring about the termination of Dual, Inc.'s involvement with the JSTARS

contract. In addition, after Dual, Inc. protested the Air Force's termination of the JSTARS contract "for cause," Lockheed allegedly retaliated within a few weeks by terminating the SEAT subcontract with Dual, Inc. Lockheed continued its alleged scheme to destroy Dual, Inc. by subsequently "reassigning" many of Dual, Inc.'s employees to Lockheed's own projects, effectively inducing them to become employees of Lockheed. It was claimed further that, after terminating the SEAT subcontract, Lockheed seduced Dual, Inc. with false promises of "bigger and better" subcontracts, all the while draining Dual, Inc.'s ability to engage in other business opportunities. On the other front, Appellants' protests to the Air Force subsequently fell short of complete success when the Air Force upheld the termination of the JSTARS contract, although changing the reason to "for the convenience of the government." [1] Nonetheless, Dual, Inc. claimed that the actions of Lockheed by that time already had undermined Dual, Inc.'s ability to carry on its business and effectively destroyed the company.

Dual, Inc. contended that it first learned of Lockheed's duplicity in early to mid–2000. The vehicle of discovery was Dual, Inc.'s acquisition sometime during that period of a copy of a 6 December 1999 final status report by Lockheed to the Department of Defense outlining Lockheed's efforts to complete the JSTARS contract. From information and clues discerned from this report, Appellants apparently formed a belief that Lockheed had engaged in a scheme to destroy Dual, Inc.'s business and assume its clients and employees. More than a year and a half later, Dual filed the first complaint

---

1. According to Dual, Inc.'s complaint and exhibits, a change from a termination "for cause" to a termination "for the convenience of the government" dramatically improved its financial situation because a termination "for cause" would have a negative implication to potential employers and creditors. In addition, Dual, Inc. stated that the change in reason for termination frustrated Lockheed's attempts to step immediately into the JSTARS contract because a termination "for cause," as opposed to a termination "for the convenience of the government," would have allowed Lockheed to assume the JSTARS contract without going through a competitive bidding process.

framing counts including breach of fiduciary duty, breach of good faith and fair dealing, tortious interference with contractual relations, tortious interference with economic and business relations (and "prospective advantage"), misappropriation of trade secrets, and breach of contract. The amended complaint, filed on 2 October 2002, added counts of breach of partnership agreement, fraud in the inducement, quantum meruit, and unjust enrichment.[2]

Lockheed, in response to the amended complaint, filed a motion to dismiss. Lockheed argued that the initial complaint was a nullity for the purpose of tolling the statute of limitations because it was filed improperly on behalf of a defunct corporation by a non-lawyer. Lockheed also argued that the claims in the amended complaint were time-barred because they accrued no later than 26 June 1999, more than three years before the filing of the amended complaint.

The Circuit Court agreed with Lockheed that the initial complaint was invalid and that the amended complaint was time-barred by the statute of limitations. Dual/Dual, Inc. appealed the judgment of the Circuit Court. Before the Court of Special Appeals could decide the case, we granted certiorari on our own initiative, 379 Md. 224, 841 A.2d 339 (2004), in

---

2. Throughout the course of this litigation, neither party has argued, for purposes of the statute of limitations analysis, a difference between claims grounded in equity, such as *quantum meruit*, and tort or contract claims based in law. The parties and the Circuit Court assumed a three-year statute of limitations for claims in law applied generally. *See* Md.Code (1973, 2002 Repl.Vol.), § 5–101 of the Courts & Judicial Proceedings Article ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). We have held that "[i]f the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action." *Ver Brycke v. Ver Brycke,* 150 Md.App. 623, 646, 822 A.2d 1226, 1239 (2003), *aff'd in part and rev'd in part on other grounds,* 379 Md. 669, 843 A.2d 758 (2004) (*quoting Grandberg v. Bernard,* 184 Md. 608, 611, 42 A.2d 118, 119 (1945)). We apply this principle here.

order to consider the following questions, which we have rephrased for the sake of clarity: [3]

1. Was the trial court correct in holding that the initial complaint was invalid?

2. Did the trial court err in ruling that all of the claims in the amended complaint were time-barred by the statute of limitations because they each accrued no later than 26 June 1999?

## II.

In considering Lockheed's motion to dismiss and Dual/Dual, Inc.'s opposition, the record indicates that the Circuit Court considered factual matters, placed before it by the parties, beyond those alleged in the complaint or amended complaint. For example, the facts of the forfeiture and revival of Dual, Inc.'s corporate charter and a copy of Lockheed's 6 December 1999 report to the Department of Defense regarding its performance under the JSTARS contract were submitted to the Circuit Court and apparently considered in acting on the motion. When a party presents factual matters outside the pleadings, and the court does not exclude them from consideration in the course of acting on a facial motion to dismiss, the court must treat the motion as a motion for summary judgment. *See* Md. Rule 2–322(c) ("If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–

3. When this Court takes a case on "bypass" of the Court of Special Appeals by issuing a writ of certiorari on its own initiative before the intermediate appellate court decides an appeal, we most frequently do so based on the Appellant's brief filed in the Court of Special Appeals. In that event, we rely on the Appellant's questions as framed in its brief before the intermediate appellate court to frame the issues we consider. In the present case, however, we granted certiorari on the basis of the prehearing information report filed in the Court of Special Appeals before the parties filed their briefs in that court. *See* Md. Rule 8–205. For that reason, we look here to the prehearing information report for guidance as to the scope of the questions to be considered.

501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501."). Therefore, Lockheed's motion to dismiss amounted to a motion for summary judgment under Md. Rule 2–501.

A trial court's grant of a summary judgment motion is proper if "there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). Maryland courts hold that a "material fact is a fact the resolution of which will somehow affect the outcome of the case." *Arroyo v. Bd. of Educ.*, 381 Md. 646, 654, 851 A.2d 576, 581 (2004) (citations omitted).

Once the moving party provides the trial court with a prima facie basis in support of the motion for summary judgment, the non-moving party is obliged to produce sufficient facts admissible in evidence, if it can, demonstrating that a genuine dispute as to a material fact or facts exists. These tendered facts should be given under oath, based on the personal knowledge of an affiant. *Id.* at 655, 851 A.2d at 581. "Bald, unsupported statements or conclusions of law are insufficient." *Id.* (citations omitted).

If no genuine dispute of material fact is found to exist, a court then considers whether the movant is entitled to judgment as a matter of law. *See* Md. Rule 2–501. On appellate review of the grant of summary judgment, we review the trial court's conclusions of law *de novo*. *Messing v. Bank of America, N.A.*, 373 Md. 672, 683–84, 821 A.2d 22, 28 (2003). As we consider the trial court's conclusions of law, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners*, 380 Md. 106, 114, 843 A.2d 865, 869 (2004).

## III.

We hold that the initial complaint filed in this case was a nullity and therefore ineffective for the purpose of tolling the

running of the statute of limitations. A corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to Dual, Inc. by law, including the power to sue or be sued, were extinguished generally as of and during the forfeiture period. *See* Md.Code (1975, 1999 Repl.Vol.), §§ 2–103(2), 3–503(d) of the Corporations & Associations Article (stating that after the State Department of Assessments and Taxation declares a corporation's charter forfeit, "the powers conferred by law on the corporations are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity"); *see also Stein v. Smith,* 358 Md. 670, 675, 751 A.2d 504, 507 (2000) (stating that upon forfeiture of the corporate charter, a corporation loses the power to sue). In this case, Dual, Inc.'s charter became forfeit on 2 October 1997. Therefore, generally any suit filed on behalf of Dual, Inc. while its charter was forfeit, was a nullity as a matter of Maryland law. *Stein,* 358 Md. at 675, 751 A.2d at 507.

■ Dual argues, however, that he filed the October 2001 complaint in his capacity as a trustee of Dual, Inc. under Md.Code (1975, 1999 Repl.Vol.), § 3–515 of the Corporations & Associations Article. This argument is unavailing. Section 3–515 provides that "[w]hen the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets *for purposes of liquidation.*" Md.Code (1975, 1999 Repl.Vol.), § 3–515(a) of the Corporations & Associations Article (emphasis added). Assuming that Dual intended to file the suit as a director-trustee,[4] § 3–515 granted him no legal authority to do so under the circumstances of this case. The powers granted to directors-trustees by § 3–515 clearly are intended only for the "winding up" of a corporation's affairs. *Patten v. Bd. of Liquor License Comm'rs,* 107 Md.App. 224, 233–234, 667 A.2d

---

4. Although nowhere in the initial or amended complaint did he claim to be a director or trustee of Dual, Inc. (claiming rather that he was "the President and sole shareholder"), Dual, in the affidavit accompanying his opposition to the motion to dismiss, added that he was "a director of Dual, Inc.," and filed the action "in order to preserve the corporation's claims against the Defendants."

940, 944–945 (1995); *see* Md.Code (1975, 1999 Repl.Vol.), § 3–515(a), (c)(4) of the Corporations & Associations Article. Thus, a trustee only may sue in the trustee's own name if there is a "rational relationship" between the suit and a legitimate "winding up" activity of the corporation. *Patten,* 107 Md.App. at 234, 667 A.2d at 945.

In *Patten,* a board director, purporting to act on behalf of a corporation whose charter had been forfeit for four years, attempted to express to a board of license commissioners the corporation's opposition to a licensee's request to transfer the ownership and location of an alcoholic beverage license.[5] 107 Md.App. at 228, 667 A.2d at 942. The protesting director had not engaged in any activity normally associated with "winding up" the corporation's affairs during the four years between forfeiture of the charter and the purported corporate opposition to the license transfer in question. *Id.* at 234, 667 A.2d at 945. Although the director argued that the protest vote came within the "winding up" powers listed in § 3–515, the Court of Special Appeals held that such statutory powers are merely "administrative in nature" and pertain only to the completion of existing corporate business. *Id.* In addition, the intermediate appellate court concluded that "even if the vote cast by [the director] was consistent with 'winding up' duties, the length of time between forfeiture of the charter and the casting of the vote raises an unexplained, perhaps unexplainable, doubt as to there being any logical association between these two actions." *Id.* As a result, the Court of Special Appeals held that nothing in § 3–515 gave the protesting director the power to vote on behalf of the defunct corporation. *Id.* at 233, 667 A.2d at 944.

---

5. Under Md.Code (1957, 2001 Repl.Vol.), Art. 2B § 10–202(e)(1), the Board of License Commissioners for Baltimore City may deny the grant or transfer of a liquor license if it appears that more than fifty percent of the owners and tenants of property situated within 200 feet of the applying business are opposed to the transfer or grant. At issue in *Patten* was the power of a director-trustee of a defunct corporation to exercise its right to oppose the transfer of a liquor license under this provision. 107 Md.App. at 228, 667 A.2d at 942.

■ Dual's initiation of the litigation in the present case is analogous to the circumstances in *Patten*. There are no allegations in the initial or amended complaint to support Dual's argument that he was "winding up" Dual, Inc.'s affairs at the time of the October 2001 complaint or at any time between forfeiture and these filings. The only support in the record for his argument is a vague allusion to "significant creditors that have to be paid," asserted by Dual's attorney at oral argument before the Circuit Court in an apparent reference to at least some of the intended beneficiaries of the money damages sought from Lockheed. That is inadequate.

In fact, the record indicates not that Dual was "winding up" Dual, Inc.'s affairs after its charter became forfeit in 1997, but rather that he actively was conducting business during this time on behalf of a corporation with a forfeit charter.[6] Dual, Inc. purported to continue performance under contracts with both the Air Force and Lockheed as late as April and May of 1999, respectively, before the contracts were terminated. Dual even alleged that Dual, Inc. was in lengthy negotiations with Lockheed as late as June of 1999, culminating in a new "bigger and better" subcontract.[7] Such activities directly contradict the notion that Dual merely was attempting to wind up existing corporate business and dispose of Dual, Inc.'s assets following the 1997 charter forfeiture. Furthermore, nothing in the record indicates that Dual made any attempt to dispose of existing assets, debts, or obligations of Dual, Inc. between June of 1999 and October of 2001. Therefore, the Circuit Court's determination that Dual was not winding up Dual, Inc.'s affairs when he filed his initial complaint in October of 2001 was not erroneous. As a result, Dual's October 2001 complaint was not sanctioned by § 3–515. Because Dual could not sue on behalf of Dual, Inc. while its

---

**6.** It is a misdemeanor to transact business in the name or for the account of a corporation with knowledge that its charter is forfeit and has not been revived. Md.Code (1975, 1999 Repl.Vol.), § 3–514 of the Corporations & Associations Article.

**7.** This subcontract was both executed and terminated on 26 June 1999.

charter was forfeit, the Circuit Court correctly determined the October 2001 complaint to be a nullity for the purpose of tolling the applicable statute of limitations.[8]

Dual, Inc. argues that the claims alleged in its amended complaint, filed after the revival of its corporate charter, should relate back to the original complaint for statute of limitations purposes. Because Dual's October 2001 complaint was a nullity, however, no cause of action repeated in Dual, Inc.'s October 2002 amended complaint may relate back to the original complaint for statute of limitations tolling purposes. *Stein*, 358 Md. at 674, 751 A.2d at 506. While the revival of a corporate charter may validate retrospectively the capacity of a corporation to sue in certain circumstances, *Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616, 618 (4th Cir.1976), such a revival does not restore rights that were divested during the period when the corporate charter was forfeit. *See* Md.Code (1975, 1999 Repl.Vol.), § 3–512 of the Corporations & Associations Article (stating that all assets and rights of a corporation are restored after the revival of its charter "except those sold or those of which [the corporation] was otherwise divested while the charter was void"); *Stein*, 358 Md. at 676, 751 A.2d at 507. Therefore, under Maryland law, where a corporation's claim is barred by the applicable statute of limitations, that claim is not resuscitated thereafter when the corporation's charter is revived. *U.S. v. Firemen's Ins. Co. of Newark, N.J.*, 869 F.Supp. 347, 348–49 (D.Md. 1994).

All causes of action alleged in the amended complaint accruing before 2 October 1999 also are time-barred. Thus,

---

**8.** We need not, and do not, reach the Circuit Court's alternate ground for finding the October 2001 complaint to be a nullity, that is that Dual, as a non-lawyer, could not file a suit on behalf of Dual, Inc. *See First Wholesale Cleaners, Inc. v. Donegal Mut. Ins. Co.*, 143 Md.App. 24, 32–36, 792 A.2d 325, 330–33 (2002) (citations omitted) (stating that although Md. Rule 2–131(a)(2) prohibits a corporation from appearing in court except through licensed counsel, the rule does not mandate any particular sanction, and allows the court discretion to either "compel compliance with the rule or [to] determine the consequences in light of the totality of the circumstances").

the Circuit Court was correct in entering judgment for Lockheed as to all of Dual, Inc.'s alleged causes of action related to the SEAT subcontract.[9] We consider next whether Dual, Inc.'s claims arising out of Lockheed's alleged conduct regarding the JSTARS contract were divested by the statute of limitations before Dual, Inc. filed its amended complaint.

## IV.

We also agree with the Circuit Court's determination that Dual, Inc.'s claims with regard to the JSTARS contract are time-barred. As a matter of law, the termination of the JSTARS contract between Dual, Inc. and the Air Force put Dual, Inc. on notice to investigate any claims that might arise from that termination. Absent any specific facts demonstrating fraud or concealment designed to frustrate a potentially aggrieved party's ability to discover evidence of wrongdoing connected with the termination of a contract, the statute of limitations begins to run when the harmed party becomes aware of the termination.[10]

Under Maryland's discovery rule, the statute of limitations does not begin to accrue on a claim until the plaintiff knows or should know of the potential claim. *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 443–44, 749 A.2d 796, 801 (2000). The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period. *Pennwalt Corp. v. Nasios*, 314 Md. 433, 440–41, 550 A.2d 1155, 1159 (1988). This stan-

---

**9.** Dual, Inc. concedes that, if the October 2001 complaint is a nullity or otherwise ineffective to toll the statute of limitations as to the claims relative to the SEAT subcontracts, such claims are time-barred. Appellants' Brief at 17.

**10.** Although Dual, Inc. sprinkled its JSTARS claims over five counts in the amended complaint, all of them spring from Lockheed's alleged tortious interference with the JSTARS contract. Accordingly, we analyze when the statute of limitations began to run on that particular claim as the litmus test for all, save the misappropriation of trade secrets claim which we consider separately *infra*.

dard, however, does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on "inquiry notice." *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Washington*, 114 Md.App. 169, 188–89, 689 A.2d 634, 644 (1997). A plaintiff is put on inquiry notice when he, she, or it possesses "facts sufficient to cause a reasonable person to investigate further, and . . . [that] a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort." *Pennwalt*, 314 Md. at 448–49, 550 A.2d at 1163–64.

## V.

We hold that, absent a showing of fraud or intentional concealment, the statute of limitations for a claim for tortious interference with contractual relations, based on the termination of a contract, begins to accrue on the date that the contract was terminated. *See D'Arcy and Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25, 30 (Mo.Ct. App.2004) (stating that the "tortious conduct was complete when [the defendant] induced or caused the breach"); *see also Hwang v. Dunkin' Donuts, Inc.*, 840 F.Supp. 193, 196 (N.D.N.Y.1994) (holding that the "statute of limitations for a claim of tortious interference [with] contractual relations begins to run when the contract in question has been breached"); *Trembath v. Digardi*, 43 Cal.App.3d 834, 118 Cal.Rptr. 124, 126 (1974) (holding that tort actions based on inducement of breach of contract begin to accrue "no later than the date of the breach [that] has been tortiously induced"). The discovery rule is premised on the discovery of the harm, even if the aggrieved party may not be aware of the extent of the harm, the source of the tortious conduct, or other intimate details of the tort. *Doe*, 114 Md.App. at 185–86, 689 A.2d at 643; *see also D'Arcy*, 129 S.W.3d at 30 (stating that a "cause of action [for tortious interference with contractual relations] accrues when damage can be ascertained—not when the precise amount of damage is known"). In the case of a claim for tortious interference with contractual relations, the inherent

harm occurs when the contract is terminated as a result of the conduct of the tortfeasor. *See D'Arcy*, 129 S.W.3d at 30; *see also Fury Imports, Inc. v. Shakespeare Co.*, 625 F.2d 585, 588 (5th Cir.1980) (stating that "inducing another to break a contract does not become a legal wrong upon which an action may be based until damage is suffered as a result, and that occurs only when the breach happens").

Therefore, once a putative plaintiff is aware, or should be aware, that its contract has been terminated, that plaintiff is under a duty to investigate the circumstances surrounding that termination. *Doe*, 114 Md.App. at 188, 689 A.2d at 644 (stating that once a plaintiff is aware that it has been harmed, "a potential plaintiff is charged with responsibility for investigating, within the limitations period, all potential claims and all potential defendants with regard to the injury"). The aggrieved party is then charged with any knowledge that could be obtained as the result of a reasonably diligent investigation within the statutory three year period. *Id.* Furthermore, the statute of limitations begins to run with the discovery of the harm (in this case the knowledge of the termination of the contract at issue), and is not delayed until the completion of a diligent investigation. *Lumsden*, 358 Md. at 447–48, 749 A.2d at 803.

In this case, Dual, Inc. claims that Lockheed tortiously interfered with Dual, Inc.'s JSTARS contract with the Air Force. Although the JSTARS contract initially was terminated "for cause" in April of 1999, the final basis for termination was not resolved until 10 June 1999. At the latest on 10 June 1999, Dual, Inc. was on notice to discover any claims that may arise as a result of that termination.[11]

Dual, Inc. claims, however, that Lockheed engaged in fraud and concealment with regard to its activities surrounding the JSTARS contract and, therefore, the statute of limita-

---

**11.** Appellants' amended complaint claims Lockheed assumed performance of the JSTARS contract "less than one week after Dual[, Inc.]'s termination for cause."

tions did not begin to run until Dual, Inc. received in early to mid–2000 the 6 December 1999 Lockheed–to–Department of Defense report. Maryland law recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant. Md.Code (1973, 2002 Repl.Vol.), § 5–203 of the Courts & Judicial Proceedings Article; *see also Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 98–99, 756 A.2d 963, 975 (2000) (stating that § 5–203 was passed to avoid situations where a plaintiff, despite a diligent investigation, is kept ignorant of the existence of a claim by the fraud of the defendant). When a defendant acts, through fraud or concealment, to frustrate the plaintiff's ability to discover a claim, the statute of limitations is tolled until "the time when the party discovered, or through the exercise of ordinary diligence should have discovered the fraud." Md.Code (1973, 2002 Repl.Vol.), § 5–203 of the Courts & Judicial Proceedings Article. The aggrieved party asserting such fraud or concealment must plead affirmatively and with specificity the supporting facts in its complaint. *Doe,* 114 Md.App. at 187, 689 A.2d at 643. The "complaint relying on the fraudulent concealment doctrine must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Id.* Finally, the pleadings must demonstrate specific facts that support a finding of fraud or concealment, and must go beyond mere conclusory statements. *Id. (citing Antigua Condo. Assoc. v. Melba Investors Atl., Inc.,* 307 Md. 700, 735, 517 A.2d 75, 93 (1986)).

 Nowhere in the record do we find any specific or detailed factual assertions as to how Lockheed concealed from Dual, Inc. its alleged role in the termination of the JSTARS contract. In lieu of that, there are only conclusory allegations unsupported by even minimal factual support. It is not enough merely to allege, in essence, that Lockheed's interference with the JSTARS contract was concealed from Dual and Dual, Inc. Dual/Dual, Inc. was required to plead with specific-

ity facts that would tend to support the claims that Lockheed and/or its pertinent subsidiaries engaged in fraud and concealment with regards to Appellants' ability to discover the claims. *Doe,* 114 Md.App. at 187, 689 A.2d at 643. Dual, Inc. failed to meet its burden.

Appellants point to the receipt in early to mid–2000 of Lockheed's 6 December 1999 report to the Department of Defense concerning the JSTARS contract as the paramount event that eventually triggered, under its application of the discovery rule, the commencement of the statute of limitations period. As stated above, however, the statute of limitations began to run when the contract termination was communicated to Dual, Inc., unless a prima facie case is shown that the putative defendant or defendants engaged in intentional concealment or fraud concerning the wrongful conduct. In addition to the lack of specific allegations supporting fraud or concealment, Appellants failed to advance facts that demonstrate why Dual, Inc. was unable to discover the information contained in the report prior to the time that it obtained the report.[12]

Dual, Inc. initiated an investigation after the Air Force terminated the JSTARS contract "for cause" in April of 1999. That investigation appears to have been curtailed when the Air Force changed its reason for termination to "for the convenience of the government" in June of 1999. Although Dual, Inc. contends in its complaint that the termination for convenience "exposed the utter baselessness of the Air Force's claim of a termination for 'cause'," Dual, Inc. does not appear to have regarded such a flip-flop by the Air Force as sufficient to warrant the continuation of the investigation into the "real" circumstances that may have procured the termination. Instead, Dual, Inc. failed to investigate further, and claims it did not become aware of Lockheed's involvement in the termination of the JSTARS contract and Lockheed's assumption of performance of the contract until it received a copy of the

---

12. It is unclear from the record the circumstances by which Dual or Dual, Inc. obtained the report to the Department of Defense.

Department of Defense report in early to mid–2000. Dual, Inc., however, fails to explain or demonstrate why it did not, or could not, discover Lockheed's role in the termination at an earlier date. *See Doe*, 114 Md.App. at 189, 689 A.2d at 644 (stating that "fraudulent concealment requires that the complaint articulate how the plaintiff learned of the fraud, and why a diligent plaintiff could not discover it sooner"). Until oral argument on the motion to dismiss before the Circuit Court, Dual, Inc. did not attempt to explain why or how the December 1999 report revealed to it Lockheed's wrongful conduct.[13]

 Furthermore, absent the presence of a fiduciary relationship or other duty to disclose, it is not enough to toll running of the statute of limitations merely to demonstrate that a defendant failed to disclose its role in the termination of a contract. *Frederick Road Ltd. P'ship*, 360 Md. at 100 n. 14, 756 A.2d at 976 n. 14. Rather, it is the duty of the plaintiff to conduct a diligent investigation or demonstrate affirmative fraud or concealment. *See id.* (stating that "[a]bsent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, . . . and that, in such cases, the affirmative act on the part of the defendant . . . must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known"). Had Lockheed, or the Air Force acting in concert with Lockheed, made misrepresentations in response to inquiries by Dual, Inc., then Dual, Inc. should have pleaded specifically the "who, when, and what" of the circumstances to meet its burden to demon-

---

**13.** Dual, Inc.'s counsel's explanation of how the 1999 report revealed Lockheed's scheme included a concession that it took "a trained eye and a knowledgeable party" to discern what Dual, Inc. found in the document. Having reviewed the document, we certainly concur with that assessment.

strate a prima facie case of fraud or concealment. *Doe,* 114 Md.App. at 188–89, 689 A.2d at 644.

Dual, Inc. simply alleges in conclusory fashion that Lockheed engaged in "breaches and subterfuge" designed to instigate the termination of the JSTARS contract. It neglects, however, to identify how Lockheed perpetuated its scheme or when the meetings with Air Force personnel allegedly occurred. Bald allegations are insufficient. *Doe,* 114 Md.App. at 187, 689 A.2d at 643; *Villarreal v. Glacken,* 63 Md.App. 114, 130–31, 492 A.2d 328, 336–37 (1985). Because there is no factual foundation to support the conclusion that Lockheed fraudulently or intentionally concealed its alleged role in the termination of the JSTARS contract, we hold that the Circuit Court did not err in determining that the statute of limitations began to run at the time of the termination of the JSTARS contract.

## VI.

■■■ Dual and Dual, Inc. also argue that, based on the dealings surrounding the SEAT subcontract, a fiduciary relationship existed with Lockheed, and as such, Appellants had "less reason to investigate potential claims against a fiduciary than a person acting at arms' length." This reasoning, even if legally sound in the abstract, is not applicable to this case. In *Frederick Road Limited Partnership,* this Court stated that Maryland recognizes the "continuation of events" principle, in which the statute of limitations for certain claims is tolled where there exists a fiduciary relationship between the parties. 360 Md. at 97, 756 A.2d at 974. Under this principle, the existence of a fiduciary relationship "generally gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." *Id.* at 97–98, 756 A.2d at 974–75.

In this case, although Dual, Inc. maintains that it was in a fiduciary relationship with Lockheed, Dual, Inc. does not offer any specific facts supporting such a relationship with regard to the SEAT subcontract, let alone the JSTARS contract. Dual,

Inc. offers only conclusory allegations in its complaint, and echoes those conclusions in its briefs here. Nevertheless, even if a fiduciary relationship existed between Lockheed and Dual, Inc. with regards to the SEAT subcontract, that relationship may not be imported into the analysis regarding Lockheed's alleged involvement in the termination of the JSTARS contract.

▆▆▆ Dual, Inc.'s JSTARS claims also fail in this regard because any fiduciary relationship Lockheed had with Dual, Inc. ceased to exist once the second SEAT subcontract was terminated on 26 June 1999. As noted previously, under the "continuation of events" principle, a harmed party's duty to investigate claims against a fiduciary for statute of limitations purposes is relaxed *during* the existence of the relationship. *Frederick Road Ltd. P'ship*, 360 Md. at 97–98, 756 A.2d at 974–75. When the parties cease their fiduciary relationship, however, the harmed party thereafter is subject to the ordinary standard for investigating the presence of claims. *Id.* at 99, 756 A.2d at 975. After Lockheed terminated the second SEAT subcontract on 26 June 1999, the record indicates that Dual, Inc. no longer had any relationship whatsoever with Lockheed. Therefore, it was upon the termination of that relationship that Dual, Inc. was on notice to investigate any claims that may have arisen during the alleged fiduciary relationship.

The Court in *Frederick Road Limited Partnership* applied the general principles of the discovery rule to situations involving fiduciaries. 360 Md. at 99–100, 756 A.2d at 975–76. The Court held that despite the existence of a fiduciary relationship among the parties, the statute of limitations would begin to run against an aggrieved party if that party had knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would have revealed wrongdoing on the part of the fiduciary. *Id.* In this case, Dual, Inc. was on notice that Lockheed may not have been acting in the best interest of Dual, Inc. when it terminated the initial SEAT subcontract and by its subsequent

conduct relating to the second SEAT subcontract. Dual, Inc. concedes in Paragraph 45 of its amended complaint that, during negotiations for the second SEAT subcontract, Lockheed attempted to have Dual, Inc. sign (which Dual refused to do) a release that purported to release Lockheed from "any and all liabilities Plaintiff would have against [Lockheed] for the breach of the First [SEAT] Contract and liabilities associated with the termination and destruction of [Dual, Inc.'s] JSTARS'S (sic) contract and business."

## VII.

Dual, Inc.'s claims relating to the misappropriation of trade secrets are also time-barred. Under Md.Code (1975, 2000 Repl.Vol.), § 11–1206 of the Commercial Law Article, an action for misappropriation of trade secrets "must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Although Dual, Inc. claims that it did not acquire actual knowledge of Lockheed's alleged misappropriation until early to mid–2000 when it received the 6 December 1999 report to the Department of Defense, constructive knowledge sufficient to trigger the statute of limitations was derived from the termination of the JSTARS contract. Dual, Inc. failed to plead adequately or specifically why it was unable to discover that Lockheed assumed Dual, Inc.'s former role in the JSTARS contract. Moreover, because Dual, Inc. failed to demonstrate that its attempts to investigate were frustrated by intentional concealment or fraud, Dual, Inc. was on notice of any consequences of knowledge of the fact that Lockheed assumed the JSTARS contract. In fact, Dual, Inc. admitted in oral argument in the Circuit Court that the knowledge that Lockheed, or anyone else, assumed the JSTARS contract within days of Dual, Inc.'s termination "raised questions" about the existence of wrongdoing surrounding the termination. In this case, Dual, Inc.'s knowledge of the termination of its JSTARS contract was sufficient to place Dual, Inc. on notice to investigate how another company was able to assume the JSTARS contract so quickly after Dual, Inc.'s termination.

176

JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONERS.