**Holly DOUGLASS**

v.

**NTI–TSS, INC.**

**Civil No. CCB–09–558.**

United States District Court, D. Maryland.

July 6, 2009.

Robert B. Goss, Law Office of Robert B. Goss, Charlottesville, VA, for Holly Douglass.

Anthony J. Breschi, Saamia H. Dasti, Barry Craig Goldstein, Warranch and

Brown LLC, Lutherville, MD, for NTI–TSS, Inc.

## *MEMORANDUM*

CATHERINE C. BLAKE, District Judge.

Now pending is a motion to dismiss filed by the defendant, NTI–TSS, Inc. ("NTI"), against the plaintiff, Holly Douglass ("Ms. Douglass"). Ms. Douglass's claims involve injuries she allegedly sustained using NTI's product and are based on the defendant's alleged failure to warn of the known risks associated with the product. NTI moves to dismiss the majority of the plaintiff's claims as time-barred by Maryland's statute of limitations, and seeks dismissal of the remaining claims for failure to allege sufficient facts to state a claim for which relief can be granted. The issues have been fully briefed and no hearing is necessary. For the following reasons, the defendant's motion will be granted.

## *BACKGROUND*

The plaintiff, Ms. Douglass, was a patient of William DeLong, D.D.S. ("Dr. DeLong"). On or about April 21, 2003, Dr. DeLong prescribed and fitted Ms. Douglass with a partial coverage mouth guard manufactured by the defendant, NTI, to be worn nightly. The mouth guard was intended to prevent or reduce headaches caused by temporomandibular joint dysfunction, known as TMJ, and to reduce or eliminate tooth damage caused by night-time teeth grinding. Dr. DeLong did not warn Ms. Douglass of risks or dangers of using the mouth guard, in particular the risk of developing an open anterior bite, nor did he obtain informed consent from Ms. Douglass.

On or about February 25, 2004, Ms. Douglass complained to Dr. DeLong of various symptoms, including that she was talking differently and having difficulty eating because her front teeth did not meet together when she bit down. She later complained to Dr. DeLong of migraine-type headaches. Dr. DeLong diagnosed Ms. Douglass with severe open anterior bite, which "involves shifting of the entire lower jaw, or the movement of teeth in the posterior portion of the mouth, so that the upper and lower teeth in the anterior or front of the mouth no longer contact each other, causing an open bite" (Compl. ¶ 7). As a result of developing the condition, the plaintiff has had to undergo significant and costly diagnostic and treatment services, and has suffered physical and emotional injury.

The plaintiff began investigating the cause of her condition approximately ten months after her diagnosis. On December 31, 2004, she found statistics on NTI's website indicating that 5% of patients develop open anterior bite along with a statement that dentists prescribing the product should warn patients of this potential risk and obtain patients' informed consent. Over one year later, in early 2006, Ms. Douglass's attorney wrote to NTI alleging that its product was defective and unreasonably dangerous due, in part, to the failure to warn plaintiff of the possibility of developing open anterior bite. The letter also stated plaintiff's belief that NTI was legally liable for her injuries. According to the complaint, counsel for NTI replied in a March 3, 2006 letter ("March 2006 letter"), stating that "in early 2003[NTI] had warned Dr. DeLong about the danger of open anterior bite, because it had provided literature and an instructional videotape discussing this possibility, which it supplied with the actual mouth guard that was shipped to the dentist." (*Id.* ¶ 21.)

The defendant has attached a copy of the March 2006 letter to its motion to

dismiss.[1] The letter states that "[w]hen [NTI] ships product to practitioner dentists informational material accompanying the treatment kits … explain how the device works and that a rare number of patients develop an anterior open bite following use of the device. The dental practitioner is advised to explain this potentiality to the patient, make sure that the patient understands it and have the patient sign an informed consent form." (Def.'s Mem. Ex. B at 2.) The letter also expressed "surprise[ ] that Dr. DeLong did not discuss with Ms. Douglass the potential development of an anterior open bite" and suggested that "Dr. DeLong's chart should contain an informed consent form signed by Ms. Douglass." (*Id.* at 1.) The letter concluded with the following passage: "If this information is news to you or Ms. Douglass and if there are no notes in Dr. DeLong's chart advising Ms. Douglass of how the [NTI] device works I submit that the cause of Ms. Douglass' present symptomology does not lie at the feet of [NTI] but perhaps elsewhere."

Approximately ten months after receiving the letter, in January 2007, the plaintiff submitted a claim to Maryland's Health Care Alternative Dispute Resolution Office ("HCADRO") alleging that Dr. DeLong was negligent for failing to obtain her informed consent. In October 2007, the pending case was transferred to the Circuit Court for Howard County at the request of Dr. DeLong. In late 2007 or early 2008, plaintiff's counsel was told by Dr. DeLong's attorney that Dr. DeLong never received any informational material from NTI regarding open anterior bite and

that he was not aware of the risk associated with the defendant's product.

According to the complaint, in the fall of 2008, the plaintiff's attorney initiated phone conversations with NTI and, during those conversations, received further assurances from NTI's attorney that the company had provided warnings about open anterior bite to Dr. DeLong. During these phone conversations, the plaintiff's attorney requested that NTI provide a witness to testify to the defendant's practices in warning dentists about open anterior bite, but "the defendant's attorney never fully responded to the requests." (Compl. ¶ 27.)

Thereafter, new counsel for Dr. DeLong spoke with an NTI representative and "was informed or led to believe that the defendant did not issue warnings about the danger of open anterior bite until sometime after the plaintiff developed the condition." (*Id.* ¶ 28). Upon receiving this information from Dr. DeLong's attorney, Ms. Douglass filed the present suit in state court on December 31, 2008, alleging negligence in Count I, willful and wanton misconduct in Count II, strict products liability in Count III, breaches of express and implied warranties in Count IV, fraud in Count V, and negligent misrepresentation in Count VI. The defendant timely removed the action to this court and filed the pending motion to dismiss.

### ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does

**1.** In examining whether the plaintiff has stated a valid claim for relief, the court went outside the four corners of the complaint to consider the March 2006 letter. Where, as here, the plaintiff has notice of a document used by the defendant in a 12(b)(6) motion, does not dispute its authenticity, and relied on

it in framing the complaint (*see* Compl. ¶ 21), the motion to dismiss need not be converted into a summary judgment motion. *See, e.g., Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). Following the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Moreover, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (quoted in *Goodman v. Praxair,* 494 F.3d 458, 466 (4th Cir.2007)). Rule 12(b)(6) motions to dismiss may properly raise statute of limitations defenses where the defense is apparent from the face of the complaint. *Wright v. United States Postal Serv.,* 305 F.Supp.2d 562, 563 (D.Md.2004) (citing *Pantry Pride Enters., Inc. v. Glenlo Corp.,* 729 F.2d 963, 965 (4th Cir.1984)).

### A. Statute of Limitations and Fraudulent Concealment

NTI seeks to dismiss several counts on the basis that Maryland's three-year statute of limitations has run and the plaintiff's claims are time-barred. *See* Md. Code, Cts. & Jud. Proc. § 5–101. Ms. Douglass maintains that the running of the

limitations period should be tolled based on the defendant's allegedly fraudulent March 2006 letter. Whether Maryland's statute of limitations will be tolled as a result of a defendant's alleged fraud is governed by section 5–203 of the Courts & Judicial Proceedings Article, which states, "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."

 Section 5–203 "recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant." *Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 857 A.2d 1095, 1105 (2004); *see also Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 756 A.2d 963, 975 (2000). In order to invoke the tolling provision, the plaintiff "must properly plead fraud with particularity," thus, "general or conclusory allegations of fraud are insufficient." *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 689 A.2d 634, 643 (1997) (internal alteration omitted). The complaint "must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Id.* As evidenced by the pleading requirements, to invoke § 5–203, the plaintiff must "ha[ve] exercised usual or ordinary diligence for the discovery and protection of . . . her rights." *Frederick Road,* 756 A.2d at 975.

 Looking to the plaintiff's complaint, Ms. Douglass alleges that after she viewed the statistical information on the defen-

dant's website, her attorney contacted NTI suggesting that the defendant's product was defective and unreasonably dangerous, in part because it lacked adequate warnings about the dangers of open anterior bite, and suggesting that the defendant was legally liable for the plaintiff's injuries. The complaint further alleges that the defendant's responsive March 2006 letter advised her that "[NTI] had warned Dr. DeLong about the danger of open anterior bite, because it had provided literature and an instructional videotape discussing the possibility, which it supplied with the actual mouth guard that was shipped to the dentist." (Compl. ¶ 21.)

The March 2006 letter, provided by the defendant, however, does not make this specific assertion. Rather, the March 2006 letter expressed surprise that Dr. DeLong had not obtained the plaintiff's informed consent and advised the plaintiff that NTI includes information regarding the risks of its product when it makes shipments to "practitioner dentists." Thus, while the letter suggests that Dr. DeLong, as a "practitioner dentist," should have received informational materials regarding the risks of developing open anterior bite, the letter does not aver that such materials were sent to Dr. DeLong specifically. While it may have been understandable to assume, as Ms. Douglass and her attorney apparently did, that Dr. DeLong received the warnings, such general statements regarding the defendant's standard practice do not rise to the level of fraudulent concealment contemplated by § 5–203.

The letter further suggests that "if there are no notes in Dr. DeLong's chart advising Ms. Douglass of how the [NTI] device works I submit that the cause of Ms. Douglass' present symptomology does not lie at the feet of [NTI] ... but perhaps elsewhere." Here again, the defendant makes no representation as to whether it in fact supplied Dr. DeLong with the informational material, but rather "submit[s]" that the defendant is not to blame if Ms. Douglass was not properly warned of the risks. In the context of an adversarial communication, such vague assurances that the defendant is not to blame for the plaintiff's injuries are insufficient to allege or constitute the kind of fraud necessary to toll the statute of limitations on the basis of fraudulent concealment.

Even if the plaintiff adequately alleged fraud, she has failed to allege that she exercised ordinary diligence in discovering the alleged fraud. The complaint indicates that Ms. Douglass learned that the defendant's product may have been the cause of her open anterior bite on December 31, 2004, and it can be fairly assumed, for purposes of this motion, that the statute of limitations on any claim she may have had against NTI began to run on that day.[2] The plaintiff, however, failed to contact the defendant for over a year.

Despite the defendant's surprise, in the March 2006 letter, that Ms. Douglass did not sign an informed consent form and its almost outright suggestion that she further investigate the matter by directing her to Dr. DeLong's files, Ms. Douglass and her attorney did not further investigate whether the defendant had, in fact, sent the referenced materials to Dr. DeLong. The letter, even if it did suggest Dr. DeLong received the material, was

**2.** Maryland recognizes the discovery rule, whereby a cause of action accrues at the time the claimant first knew or reasonably should have known of the injury. *See Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155, 1167 (1988) (noting that in a medical products liability action, the limitations period begins to run when the plaintiff knows or should have known "(1) he suffered injury; (2) the injury was caused by the defendant; and (3) there was manufacturer wrongdoing or a product defect").

certainly enough to put Ms. Douglass on notice that further investigation was warranted. *See Sasso v. Koehler,* 451 F.Supp. 933, 936 (D.Md.1978) (noting, in the context of § 5–203, "the key questions are whether the plaintiff could have tried to get information, or had enough information to be alerted to a possible need to look further. Once a plaintiff has a basis to look further, failure to do so is failure to exercise the requisite standard of care"). Yet, the plaintiff made no further inquiries with NTI, at that time, and waited another 10 months to file a complaint against Dr. DeLong.

The complaint indicates that Ms. Douglass made no efforts to follow up with NTI until the fall of 2008, nearly four years after her first communication with the defendant, and well outside the statute of limitations.[3] And the plaintiff appears to have initiated further contact with the defendant solely because her attorney learned from Dr. DeLong's counsel, approximately one year after filing a complaint against the doctor, that he never received the warnings referenced in the defendant's March 2006 letter. There is little doubt that had the plaintiff been pursuing her rights diligently, she could have learned this information months earlier. *See Sasso,* 451 F.Supp. at 936 ("The point of the due diligence requirement is, that even in the presence of fraud, a party cannot abdicate all responsibility for protecting his rights."). Yet the complaint makes no reference to any discovery she initiated or attempted to initiate in her action against Dr. DeLong.

■ The defendant's March 2006 letter alerted the plaintiff to two possible scenarios regarding her injury, either that NTI failed to inform Dr. DeLong of the risks or that NTI did inform Dr. DeLong but he, in turn, failed to inform the plaintiff. Ms. Douglass failed to investigate the first possibility within the limitations period, and her apparent lack of diligence in pursuing the second kept her from discovering the alleged critical facts. In short, she had a duty to pursue her rights against all potential defendants diligently, and she failed to do so. Ms. Douglass's suggestion that she and her attorney had no reason to doubt NTI's lawyer does not relieve her of her duty to exercise ordinary diligence in discovering the alleged fraud, particularly considering that the communication came from a potential adversary. *Cf. Herring v. Offutt,* 266 Md. 593, 295 A.2d 876, 881 (1972) (noting that when in a confidential relationship, a party may relax its vigilance in relying on the good faith of the other party). Even construing the facts and making all reasonable inferences in favor of the plaintiff, she has failed to allege the requisite diligence in discovering the alleged fraud. Accordingly, her claims of negligence, willful and wanton misconduct, strict products liability, and breach of warranty against NTI are time-barred.

## B. Fraud and Negligent Misrepresentation

■ The elements of fraud in Maryland are well-established: 1) the defendant made a false representation to the plaintiff, 2) its falsity was either known to the defendant or the representation was made with reckless indifference as to its truth, 3) the misrepresentation was made for the purpose of defrauding the plaintiff, 4) the plaintiff relied on the misrepresentation and had the right to rely upon it, and 5) the plaintiff suffered compensable injury resulting from the misrepresentation.

---

**3.** Because, as concluded below, the March 2006 letter did not toll the statute of limitations, the plaintiff's claims were time-barred as of December 31, 2007. Any alleged communications initiated after this date are not relevant to the tolling analysis.

*See, e.g., Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276, 292 (2005). The elements of negligent misrepresentation are similar and require: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) intending that the statement will be acted on by the plaintiff; (3) with knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) suffers damage proximately caused by the defendant's negligence. *See Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534, 539 (1982).

█ As discussed above, the March 2006 letter indicates that NTI's standard practice is to include informational material regarding the risks of its products along with product shipments to "practitioner dentists" and that Ms. Douglass should have signed an informed consent form at the request of Dr. DeLong. The letter does not state that NTI, in fact, supplied Dr. DeLong with this information. Rather, the letter suggests that Dr. DeLong, as a practitioner dentist, should have received the information and should have requested Ms. Douglass give her informed consent.

Moreover, considering that the March 2006 letter was sent in response to the threat of litigation, the plaintiff's allegations do not support an inference that she reasonably relied on the letter's general statement that practitioner dentists receive informational material as a statement of fact regarding Dr. DeLong's receipt of such materials, or that she had a right to rely on the defendant's submission in the letter that NTI was not responsible for her injuries. Instead, as noted above, the alleged facts suggest that the letter put her on notice that further investigation was warranted. Additionally, the facts do not support an inference that the defendant's letter was intended to defraud the plaintiff, as the letter urged Ms. Douglass to further investigate whether Dr. DeLong informed her of the risks, and such investigation, if undertaken with diligence, would have likely uncovered whether Dr. DeLong received the warnings. Lastly, as discussed above, the plaintiff's failure to diligently pursue her rights after being put on notice of the defendant's alleged wrongdoing is the cause of her injuries alleged in Counts V and VI. For various reasons, then, the plaintiff has failed to state a claim for fraud or negligent misrepresentation. Accordingly, these counts will be dismissed.

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. the defendants' motion to dismiss (docket entry no. 8) is **GRANTED**; and

2. the Clerk shall **CLOSE** this case.