961 A.2d 574

**PINES POINT MARINA, a Condominium Council of Unit Owners, Inc.**

v.

**Jim REHAK, et al.**

No. 22 Sept.Term, 2008.

Court of Appeals of Maryland.

Dec. 11, 2008.

614

David N. Honick (The Law Offices of David N. Honick, P.A., Salisbury, MD), on brief, for Appellant.

William N. Butler (Samuel M. Grant of Butler, Melfa & Taylor, P.A., Towson, MD; Glenn E. Bushell and Jaime W. Luse of Tydings & Rosenberg, L.L.P., Baltimore, MD; Jeffrey R. Gans and Elizabeth M. Walsh of Thelen Reid Brown Raysman & Steiner, L.L.P., Washington, DC), all on brief, for Appellees.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, Judge.

The issue presented to the Court by this case is whether a condominium council of unit owners, which under Md.Code, Real Property Article, § 11–109(d) (2003 & Supp.2008) "may be either incorporated as a nonstock corporation or unincorporated," has standing to file and maintain a lawsuit during the time its corporate charter was forfeit. The Circuit Court for Worcester County, entering summary judgment in this litigation against Pines Point Marina, A Condominium Council of Unit Owners, Inc. ("Pines Point Marina"), determined that, under *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095 (2004), and *Stein v. Smith*, 358 Md. 670, 751 A.2d 504 (2000), Pines Point Marina lacked standing to bring this suit because its corporate charter was forfeit at the time the action commenced. Thus, summary judgment in favor of defendants Jim Rehak d/b/a Rehak Floating Docks, M.V. of Ocean Pines Limited Partnership, and Topper Industries Inc.[1]

---

1. A fourth defendant named in the initial complaint, North American Specialty Insurance Company, is not a party to this appeal because the

was appropriate on the ground that the powers of the condominium council of unit owners, as a Maryland corporation, were inoperative, including the power to sue. According to the trial court, Pines Point Marina could not maintain the suit because it did not revive its corporate charter before the applicable three year statute of limitations ran on its claims against the defendants.

Pines Point Marina appealed to the Court of Special Appeals. On our motion, we issued a writ of certiorari to the intermediate appellate court before it decided the appeal. For reasons to be explained, we shall reverse the judgment of the Circuit Court and remand the case for further proceedings not inconsistent with this Opinion.

## I.

### Factual Background

The allegations of material fact are not in dispute. On 20 July 1999, Pines Point Marina incorporated under Maryland corporation law as a non-stock, non-close corporation. The condominium is located in Ocean Pines, Maryland, and consists primarily of four dwelling units, two commercial units, and approximately two hundred-eleven boat slips, most of which are owned as common elements by the participating co-owners.

Between 1999 and 2005, Pines Point Marina entered into contracts with M.V. Ocean Pines Limited Partnership ("M.V. Ocean Pines"), the developer of the marina, for the installation and acquisition of condominium unit boat slips. M.V. Ocean Pines employed Jim Rehak d/b/a Rehak Floating Docks ("Rehak") as a subcontractor to construct floating docks. M.V. Ocean Pines supervised the construction of the docks by Rehak. The flotation devices used for the floating docks were manufactured and supplied by Topper Industries Incorporated ("Topper"), a corporation engaged in that business. Topper

---

complaint against the company was voluntarily dismissed in the Circuit Court on other grounds.

supplied the floating docks directly to Rehak, pursuant to a contract between them.

During September, October, and November 2003, the eastern coast of the United States experienced several strong storms, including Hurricane/Tropical Storm Isabel. As a result of these storms, Pines Point Marina "began to notice [in October 2003] that many of the flotation devices for the floating docks in the Marina had come loose."

On 30 August 2006, Pines Point Marina filed a complaint in the Circuit Court against M.V. Ocean Pines, Rehak, Topper, and the North American Specialty Insurance Company alleging poor workmanship and defective construction of the marina. Discovery responses placed 4 October 2003 as the earliest date of discovery by the plaintiff of the alleged damages giving rise to the claims.

The defendants sought summary judgment on the basis that, on 7 October 2005, the Maryland Department of Assessments and Taxation forfeited Pines Point Marina's corporate charter for failure to file required state tax returns. It was not until 4 December 2006 that Pines Point Marina revived its corporate status. The Circuit Court granted Appellees' motions for summary judgment on the ground that Pines Point Marina, as an entity incorporated under Maryland law, failed to bring suit, or amend the complaint, during the time when it was in good corporate standing and before the applicable statute of limitations ran on its claims.

## II.

### Discussion

The grant of summary judgment is proper if "there is no genuine dispute as to any material fact and . . . the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). On appellate review of the grant of summary judgment, we review the trial court's conclusions of law under a non-deferential standard. *Messing v. Bank of Am., N.A.*, 373 Md. 672, 684, 821 A.2d 22, 28 (2003)

(citations omitted). In considering the trial court's conclusions of law, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners*, 380 Md. 106, 114, 843 A.2d 865, 869 (2004) (citations omitted).

## A. Condominium History & Law in Maryland

Development of condominiums in Maryland dates back to the adoption of the first Horizontal Property Act in the State in the early 1960s. *See* Maryland Commission on Condominiums—Preliminary Report to the 1978 Session 1 (1978) [hereinafter Preliminary Report]. At first, development was slow. Preliminary Report at 1. By the end of the 1960s, however, the State experienced a condominium boom, with intensive development through conversion of existing dwelling units and new construction taking place in Montgomery and Prince George's Counties, Baltimore City and County, Annapolis, Columbia, and Ocean City. Preliminary Report at 1.

When the general economy slowed in the mid–1970s, an increasing number of condominium projects were handed over to the unit owners, which led to widespread abuse. Preliminary Report at 1. As the Commission Report noted, "[e]conomic difficulties, internal management problems, 'sweetheart' contracts, developer 'lowballing' and failure to complete amenities, and underfinancing brought many developments to the brink of failure or into bankruptcy." Preliminary Report at 1. The harsh slowdown in the economy forced out most marginal developers, and also "exacerbated difficulties in solid, well-planned developments by slowing the pace of sales and creating cash-flow difficulties." Preliminary Report at 1. Further, in developments where condominiums were sold successfully, a parallel slowdown in resales was experienced. Preliminary Report at 1.

The economic instability of the late 1960s and early 1970s, combined with the boom in condominium development, exposed a myriad of flaws in the first Horizontal Property Act.

Thus, the General Assembly decided in 1974 to replace it with the Maryland Condominium Act. Preliminary Report at 1. That Act put in place much of the language and structure of the current Maryland Condominium Act, Md.Code, Real Property § § 11–101 to –143 (2003 & Supp.2008), including the section at the core of the issue in the present case, Md.Code, Real Property § 11–109.

### B. Section 11–109

Section 11–109(a) of the Real Property Article provides, in part, that "[t]he affairs of the condominium shall be governed by a council of unit owners which, even if unincorporated, is constituted a legal entity for all purposes." Additionally, § 11–109(d) provides, in pertinent part, that

[t]he council of unit owners may be either incorporated as a nonstock corporation or unincorporated and it is subject to those provisions of Title 5, Subtitle 2 of the Corporations and Associations Article which are not inconsistent with this title. The council of unit owners has, subject to any provision of this title, and except as provided in paragraph (22) of this subsection, the declaration, and bylaws, the following powers:

(1) To have perpetual existence, subject to the right of the unit owners to terminate the condominium regime as provided in § 11–123 of this title;

. . .

(4) To sue and be sued, complain and defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium;

. . .

(21) Generally, to exercise the powers set forth in this title and the declaration or bylaws and to do every other act not inconsistent with law, which may be appropriate to promote and attain the purposes set forth in this title, the declaration, or bylaws[.] . . .

Pines Point Marina contends that Real Property § 11–109, in essence, creates a "dormant-entity" status for incorporated condominium councils of unit owners. It acknowledges that, under Maryland general corporation law, once a corporation forfeits its corporate charter, the corporation as such ceases to have a legal existence and thus loses the ordinary legal privileges afforded under the law to a corporation, including the right to bring suit. *See Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095 (2004); *Stein v. Smith*, 358 Md. 670, 751 A.2d 504 (2000). A council of unit owners, however, is to be distinguished from any other entity incorporated under Maryland law, Pines Point posits, because councils of unit owners derive their fundamental legal existence and associated powers/rights not from the act of incorporating as such, but from § 11–109, which provides that a council of unit owners, whether incorporated or not, "is constituted a legal entity for all purposes." Md.Code, Real Property § 11–109(a). Thus, Appellant argues that, even upon its loss of corporate status and unlike any other type of entity so situated, it became by default an unincorporated association under § 11–109 with the right to sue and be sued, apparently without further ado.

Topper, Rehak, and M.V. Ocean Pines take the position that the proper result in this case is governed by *Dual Inc.*, 383 Md. 151, 857 A.2d 1095, and *Stein v. Smith*, 358 Md. 670, 751 A.2d 504. In *Dual Inc.*, we held that a corporation, the charter for which became forfeit, was a legal non-entity; thus, "all powers granted to [the corporation] by law, including the power to sue or be sued, [are] extinguished generally as of and during the forfeiture period." *Dual Inc.*, 383 Md. at 163, 857 A.2d at 1101 (citing Md.Code, Corporations & Associations §§ 2–103(2), 3–503(d) (1975, 1999 Repl.Vol.)). The corporation in *Dual Inc.* brought suit against Lockheed in 2001 during a period in which Dual's corporate charter was forfeit. *Dual Inc.*, 383 Md. at 166, 857 A.2d at 1103. Dual, with assistance of counsel, revived its charter and amended its complaint in 2002, modifying some of the previously pleaded counts and adding additional counts, and sought to relate the amended

complaint back to the original complaint because the statute of limitations period otherwise would have expired before the filing of the amended complaint. *Dual Inc.,* 383 Md. at 157, 166, 857 A.2d at 1098, 1103. We held that, because the corporation lost its legal privilege to bring suit upon the forfeiture of its charter, the initial complaint filed in 2001 was a nullity, such that there was nothing to which the 2002 amended complaint could relate back and, therefore, the statute of limitations ran on the claim before the corporation revived its charter in 2002 and filed the amended complaint. *Dual Inc.,* 383 Md. at 166, 857 A.2d at 1103 (citations omitted). In *Stein,* we held that "the statute of limitations is not tolled by the filing of an action in the name of a corporation whose charter had been forfeited and never revived. . . ." *Stein,* 358 Md. at 671, 751 A.2d at 504.

Relying on *Dual Inc.* and *Stein,* Topper, Rehak, and M.V. Ocean Pines argue that Pines Point Marina's claim is barred in the present case because the council of unit owners, purporting to act as a corporation, filed the complaint in this litigation at a time when its corporate charter was forfeit and, because the complaint therefore was a nullity, suit was not brought properly within three years of when the council of unit owners knew or reasonably should have known of its claims against the defendants. *See* Md.Code, Courts & Judicial Proceedings § 5–101 (2006 Repl.Vol. & Supp.2008) ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981) (holding that the discovery rule is applicable generally in all actions and the "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong"). Appellees, in their briefs, assert that, § 11–109 notwithstanding, by having chosen to incorporate the council of unit owners, Pines Point Marina elected to be subject to the same regulations, conditions, and penalties imposed on any non-stock corporation under Maryland law. In rejecting the "dormant-entity" interpretation, Appellees interpret the "or"

in § 11–109(d)'s "either incorporated as a nonstock corpora- tion or unincorporated" as a categorical elective choice that a council of unit owners may have only one legal existence— incorporated or unincorporated—with attendant consequences for failure to maintain properly either status.[2] Thus, Appel- lees argue that because Pines Point Marina chose to incorpo- rate, the council became subject to Maryland general corpora- tion law such that, as interpreted and applied in *Dual Inc.* and *Stein,* the failure to maintain corporate status during the time leading up to and at which it filed the complaint means the action in the present case was a nullity and is now barred under Maryland's three year statute of limitations. Md.Code, Courts & Judicial Proceedings § 5–101.

Appellee Topper highlights the opening sentence of § 11– 109(d), which, cross-referencing the Corporations & Associa- tions Article of the Maryland Code, provides that the "council of unit owners may be either incorporated as a nonstock corporation or unincorporated and it is subject to those provi- sions of Title 5, Subtitle 2 of the Corporations and Associa- tions Article which are not inconsistent with this title." Md. Code, Real Property § 11–109(d). Topper asserts that, under the applicable provisions of the Corporations & Associations Article, Pines Point Marina, as a non-stock corporation, is subject to the same repercussions suffered by any corporation that fails to comply with statutory filing requirements, includ- ing losing the power to bring and maintain suit.

### C. Corporations and Associations Article

Title 5, Subtitle 2 of the Corporations & Associations Article deals specifically with nonstock corporations. Section 5–201 provides that the "provisions of the Maryland General Corpo-

---

2. Appellee Rehak did not take the position that Pines Point Marina ceased to exist as a legal entity when its corporate charter was revoked. He conceded that, even after the corporate charter became forfeit, Pines Point Marina existed and could function as an unincorporated association. Although the council thus could continue to function, in the present case the council "was a master of its own complaint" and chose to characterize itself there as a corporation. Because the corpo- ration did not legally exist, Rehak argues, the complaint was a nullity.

ration Law apply to nonstock corporations unless: (1) [t]he context of the provisions clearly requires otherwise; or (2) [s]pecific provisions of this subtitle or other subtitles governing specific classes of corporations provide otherwise." Md. Code, Corporations & Associations § 5–201 (2007 Repl.Vol. & Supp.2008). Section 5–208(a) provides, in part, that "[e]xcept as otherwise provided in this section, the dissolution or forfeiture of the charter of a nonstock corporation shall be effected as provided in Title 3 of this article." Md.Code, Corporations & Associations § 5–208(a). Section 3–503 of Title 3 deals with "[f]orfeiture of charter for nonpayment of taxes or failure to file report." Md.Code, Corporations & Associations § 3–503.

Section 3–503 provides for three certifications of all Maryland corporations to be made each year by the State Comptroller, the Secretary of Labor, Licensing, and Regulation, and the Department of Assessments and Taxation. These three entities, respectively, are responsible for certifying which Maryland corporations have failed to pay a tax, failed to pay an unemployment insurance contribution, or failed to file an annual report within the time due. Section 3–503 provides, once the lists are certified, as the penalty for non-compliance

the Department [of Assessments and Taxation] shall issue a proclamation declaring that the charters of the corporations are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind either at law or in equity.

Md.Code, Corporations & Associations § 3–503(d). Thus, as Topper's argument goes: (1) Real Property § 11–109(d) invokes Title 5, Subtitle 2 of the Corporations & Associations Article, (2) which, in § 5–208(a), in turn invokes § 3–503(d)(3) which, when applied to the present case, mandates the forfeiture of Pines Point Marina's corporate status and therefore its ability to sue as a corporation. There are, however, a number of ambiguities and inconsistencies between the provisions of the Maryland Condominium Act and these provisions of the Corporations & Associations Article that diminish the persuasive force of this argument.

Some of the ambiguities and inconsistencies that arise in interpreting the language of Real Property § 11–109 and the embedded, cross-referenced provisions of the Corporations & Associations Article and militate against embracing Topper's argument are:

(1) Section 11–109(a) provides that the council of unit owners "even if unincorporated, is constituted a legal entity for all purposes." Md.Code, Real Property § 11–109(a). We are unable to find any indication whether the phrase "even if unincorporated" is intended to apply only to councils of unit owners that never incorporated, or to apply as well to those that incorporated, but forfeited that status. Further, there is no indication of how "is constituted a legal entity for all purposes" is to operate with respect to § 3–503(d) of the Corporations & Associations Article's entity forfeiture.

(2) Section 11–109(d) provides that the council of unit owners "may be either incorporated as a nonstock corporation or unincorporated." There is no indication whether the "may be either" language is intended to mandate a choice between mutually exclusive entities or merely reiterates § 11–109(a)'s premise that the council continues to exist whether incorporated or unincorporated.

(3) Section 11–109(d) provides that the council of unit owners "is subject to those provisions of Title 5, Subtitle 2 of the Corporations and Associations Article which are not inconsistent with this title." Section 3–503(d) of the Corporations & Associations Article, which is made applicable through § 5–208, provides that after the lists of non-complying corporations are certified, the Department is to forfeit the "charters of the corporations" and, consequently, the powers conferred by law "on the corporations" are null and void, including the ability to bring suit "at law or in equity." This consequence seems at odds with Real Property § 11–109. In two different subsections, § 11–109 provides that the council of unit owners is constituted a legal entity whether incorporated or unincorporated. Md.Code, Real Property § 11–109(a), (d).

Because we find that the language of § 11–109 is ambiguous as regards the issue presented in the present case, we shall look to secondary sources in aid of divining the intent of the Legislature.

### D. Examination of Secondary Sources

### 1. Report & Recommendation of the Real Property, Planning & Zoning Section of the Maryland State Bar Association

In 1973–74, the Condominium Revision Committee of the Real Property, Planning & Zoning Section of the Maryland State Bar Association produced a recommendation that became the Maryland Condominium Act as adopted by the General Assembly in 1974. In an accompanying Report, the Committee included a "Committee Comments by Section" addendum. The comment on the Committee's draft of the then § 11–109 [3] was as follows:

---

**3.** The Maryland Condominium Act's original § 11–109 provided in part:

(A) The affairs of the condominium shall be governed by a Council of Unit Owners which, even if unincorporated, is constituted a legal entity for all purposes. The Council of Unit Owners shall be comprised of all unit owners.
. . .
(D) The Council of Unit Owners may be either incorporated or unincorporated. If incorporated, it is subject to those provisions of Article 23 applicable to non-stock corporations which are not inconsistent with this title. If the Council of Unit Owners is unincorporated, it shall have, subject to any provision of this title, the declaration, and by-laws, the following powers:
(1) To have perpetual existence . . .;
(2) To sue and be sued, complain and defend in any court
. . . .
1974 Md. Laws Ch. 641. In 1975, the General Assembly added to § 11–109(d) by providing that the council of unit owners, if incorporated, must be incorporated "as a nonstock corporation." 1975 Md. Laws Ch. 374. In 1980, the General Assembly amended the language of § 11–109(d) again, consistent with the Uniform Condominium Act, to provide that if unincorporated, the council of unit owners has the power to "sue and be sued, complain and defend in any court, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium. . . ." 1980 Md. Laws Ch. 681. In 1981, the General

Section 11–109 clarifies and enlarges the powers of the Council of Unit Owners. The Council may be incorporated or unincorporated and the Council shall, in any event, "be a legal entity for all purposes" thereby eliminating the question of whether or not the Council has standing to sue and be sued. Although previous versions of this Title are silent on the subject of the authority of the Council to incorporate, they did not prohibit incorporation, and Section 11–109 should not be construed to question or adversely characterize the validity of Councils of Unit Owners incorporated prior to the effective date of this Section.

Condominium Revision Committee of the Real Property, Planning & Zoning Section of the Maryland State Bar Association, Committee Report at 6 (1974). An analysis of the 1974 Act, written a few years later, similarly opined:

In addition to permitting the Council to be incorporated as a membership ("nonstock") corporation, this Section states that even if the Council is not incorporated, it is subject to certain statutes that regulate such corporations. These statutes will be meaningful only in unusual circumstances and then only to the extent that they are "not inconsistent with" the condominium law. Because the corporation statute regulating membership corporations, Section 5–201, et seq., of the Corporations and Associations Article of the Annotated Code of Maryland, states that the general corporation law of Maryland applies to membership corporations, the Condominium law, in effect, makes all condominiums subject to the statutes that concern general business corporations, including large, publicly-held ones, unless such law is inconsistent with the Condominium Law.

---

Assembly amended the language of the first two sentences of § 11–109(d) (to its current form) to provide:

The Council of Unit Owners may be either incorporated as a nonstock corporation or unincorporated and it is subject to those provisions of Title 5, Subtitle 2 of the Corporations and Associations Article of the Code which are not inconsistent with this title. The Council of Unit Owners has, subject to any provision of this title, the declaration, and bylaws, the following powers. . . .

1981 Md. Laws Ch. 246.

Whether this result is appropriate—or wise—remains to be seen.

Under the "old" Condominium Law only a Council that was incorporated was subject to the statutes regulating corporations. Because there has been no significant litigation or experience, it is still uncertain whether the application of these provisions to condominium affairs will cause any serious problems.

Robert B. Taylor, Maryland's New Condominium Law: An Analysis 11 (1981).

## 2. Uniform Condominium Act

In August 1977, the National Conference of Commissioners on State Laws approved the Uniform Condominium Act ("UCA"). Stephen B. Cohen et al., *Condominium Law: A Comparison of the Uniform Act With the Illinois Act,* 14 J. Marshall L.Rev. 387, 387 (1981). The Uniform Condominium Act was an attempt by the National Conference to bring state condominium laws up-to-date with the state of affairs spawned by the burgeoning development of condominiums throughout the country. In February 1978, the American Bar Association endorsed the Act, noting:

A major accomplishment of the UCA will be to relieve condominium development from outmoded constraints imposed by the common law of real property, and from unintended constraints imposed by inartful first generation condominium legislation. These constraints have, without logical basis, interfered with the flexibility needed by developers to phase their projects, and even interfere with the flexibility needed by unit owners to make desirable arrangements of project areas after expiration of developer control.

Cohen et al., 14 J. Marshall L.Rev. at 387–88 (quoting National Conference of Commissioners on Uniform State Laws, Uniform Law Memo 15 (Winter, 1977)). Thus, the Uniform Act was an attempt to bring a comprehensive and adaptive system to the specific nuances of condominium development projects.

The language and history of § 3–101 of the Uniform Condominium Act provides some instruction for the purposes of the issue presently before this Court. Section 3–101 provides:

A unit owners' association must be organized no later than the date the first unit in the condominium is conveyed. The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the condominium, of all former unit owners entitled to distributions of proceeds under Section 2–118, or their heirs, successors, or assigns. The association shall be organized as a profit or nonprofit corporation [or as an unincorporated association.]

Unif. Condo. Act § 3–101 (1977). The bracketed phrase was explained by the Commissioners in an accompanying comment as follows:

The bracketed language preserves the flexibility existing under the vast majority of present condominium statutes to organize the association as a profit or non-profit corporation or as an unincorporated association. Although at least one state (Georgia) requires the organization of the association in corporate form, it is not desirable to mandate this result in a uniform act. If a state wishes to mandate incorporation, it should delete the bracketed language.

Unif. Condo. Act § 3–101 cmt. 2 (1977). The thrust of § 3–101 of the Uniform Act seems to be that the unit owners' association is to be "organized," or established, as one of the statutorily-appropriate entities.

Currently, eight states have adopted § 3–101 of the Uniform Condominium Act, including the bracketed language, in their state condominium acts.[4] Another twelve either have adopted § 3–101 without the bracketed language or otherwise

---

4. *See* Ariz.Rev.Stat. Ann. § 33–1241 (2008); La.Rev.Stat. Ann. § 9:1123.101 (2008); Mo. Ann. Stat. § 448.3–101 (West 2008); Neb. Rev.Stat. § 76–859 (West 2008); N.M. Stat. Ann. § 47–7C–1 (West 2008); N.C. Gen.Stat. Ann. § 47C–3–101 (West 2008); 68 Pa. Cons. Stat. Ann. § 3301 (West 2008); R.I. Gen. Laws § 34–36.1–3.01 (West 2008).

mandated that the association be incorporated or organized as some similar entity.[5] Twenty states and the District of Columbia, including Maryland, however, have chosen not to adopt the Uniform Act's dichotomous approach, instead providing in general language that councils of unit owners in condominium associations may function and possess certain powers as incorporated or unincorporated entities.[6]

---

5. *See* Ala.Code § 35–8A–301 (2008); Alaska Stat. § 34.08.310 (West 2008) (association must be incorporated or be a trust or partnership); Colo.Rev.Stat. Ann. § 38–33.3–301 (West 2008) (association should be organized as a corporation or limited liability company, but its failure to so organize does not adversely affect the existence of the community); Fla. Stat. Ann. § 718.111 (West 2008) (association must be a Florida corporation); Ga.Code Ann. § 44–3–100 (West 2008) (association must be a Georgia corporation); Me.Rev.Stat. Ann. tit. 33, § 1603–101 (2008) (association must be organized as a corporation); Minn. Stat. Ann. § 515A.3–101 (West 2008); Nev.Rev.Stat. Ann. § 116.3101 (West 2008) (association must be organized as a corporation, association, limited-liability company, trust or partnership); Or.Rev.Stat. Ann. § 100.405 (West 2008) ("The association of a condominium created on or after September 27, 2007, shall be organized as a corporation for profit or nonprofit corporation...."); Tenn.Code Ann. § 66–27–102 to –103 (West 2008) (developments require a "townhouse corporation"); Tex. Prop.Code Ann. § 82.101 (Vernon 2008) (association must be organized as a corporation); Wash. Rev.Code Ann. § 64.34.300 (West 2008) (association must be organized as a corporation).

6. *See* Cal. Civ.Code § 1363(a) (West 2008) ("A common interest development shall be managed by an association that may be incorporated or unincorporated."); Conn. Gen.Stat. Ann. § 47–80a(a) (West 2008) ("The foregoing enumeration of powers shall not be construed to prohibit the grant by the condominium instruments of other powers and responsibilities to the unit owners' association, or to divest a unit owners' association incorporated as a stock corporation under chapter 601 or any predecessor statutes thereto, or as a nonstock corporation under chapter 602 or any predecessor statutes thereto, of any powers which it may exercise thereunder."); D.C.Code § 42–1903.01(a) (2008) ("The unit owners' association may be incorporated."); Idaho Code Ann. §§ 55–1503(f), –1513 (West 2008); 765 Ill. Comp. Stat. Ann. 605/18.3 (West 2008) ("The association, whether or not it is incorporated, shall have those powers and responsibilities specified in the 'General Not For Profit Corporation Act of 1986' that are not inconsistent with this Act or the condominium instruments...."); Ind.Code Ann. § 32–25–9–1(c) to –2 (West 2008) (providing that the association "may be organized" as a nonprofit corporation or an unincorporated association); Iowa Code Ann. § 499B.2(4) (West 2008) ("The business and affairs of the council of co-owners may be conducted by organizing a

corporation not for pecuniary profit of which the co-owners are members."); Ky.Rev.Stat. Ann. § 381.810, .883 (West 2008); Md.Code Ann., Real Prop. § 11–109; Mass. Gen. Laws Ann. ch. 183A, §§ 1, 10 (West 2008) (defining "organization of unit owners" as "the corporation, trust or association owned by the unit owners and used by them to manage and regulate the condominium"); Mich. Comp. Laws Ann. §§ 559.109, .215 (West 2008); N.H.Rev.Stat. Ann. § 356–B:35(I) (2008) ("The unit owners' association may be incorporated."); N.J. Stat. Ann. § 46:8B–12 (West 2008) ("The association may be any entity recognized by the laws of New Jersey, including but not limited to a business corporation or a nonprofit corporation."); N.Y. Real Prop. Law § 339–v(1)(a) (McKinney 2008) ("Nothing contained herein shall bar the incorporation of the board of managers under applicable statutes of this state; such incorporation must be consistent with the other provisions of this article and the nature of the condominium purpose."); Ohio Rev.Code Ann. § 5311.08(E) (West 2008) ("The board of directors, or the developer while in control of the association, may take any measures necessary to incorporate the unit owners association as a not-for-profit corporation."); Okla. Stat. Ann. tit. 60, §§ 502, 03, 29 (West 2008); S.C.Code Ann. § 27–31–90 (2008) ("Nothing herein contained shall prohibit any council of co-owners from incorporating pursuant to the laws of South Carolina for the purpose of the administration of the property constituted into a horizontal property regime."); Utah Code Ann. §§ 57–8–3, –33 (West 2008); Va.Code Ann. § 55–79.73(A) (West 2008) ("The unit owners' association may be incorporated."); Wis. Stat. Ann. § 703.15(1) (West 2008) ("The affairs of every condominium shall be governed by an association that, even if unincorporated, is constituted a legal entity for all purposes."); Wyo. Stat. Ann. § 34–20–104 (West 2008).

Five states have quasi-public condominium regimes that provide either for condominium developments to file disclosures and seek approval from a designated governmental entity, or for the developments to be filed publicly and then reviewed by a designated governmental entity. *See* Del.Code Ann. tit. 25, § 7106 (West 2008) (*requiring approval from the Attorney General for condominium conversion plans*); Haw.Rev.Stat. §§ 514A–11, –20 (West 2008) (requiring extensive disclosures to the Bureau of Conveyances and the Land Court); Mont.Code Ann. § 70–23–101 to –902 (West 2008) (requiring approval from the Department of Revenue for condominium plans); N.D. Cent. Code § 47–04.1–01 to –14 (West 2008) (requiring disclosures in condominium plan filings); S.D. Codified Laws § 43–15A–1 to –30 (2008) (providing for a disclosure and recording system with a possible review by the Real Estate Commission).

The remaining five states' condominium statutes are silent with regards to mentioning any specific entity form the unit owners' association may take. *See* Kan. Stat. Ann. § 58–3127 (West 2008) (does not provide for possible entities for unit owners' association but does provide for right to bring cause of action on behalf of two or more owners on matters affecting common areas); Miss.Code Ann. § 89–9–1 to –37 (West 2008) (does not specify entities); Vt. Stat. Ann. tit. 27, § 1327 (West 2008) (very similar to Kansas' provision); W. Va.Code Ann. §§ 36A–3–5, –7 (West 2008) (does not specify entities but does provide for right to damages or injunctive relief for failure to comply

We find it somewhat instructive that the General Assembly did not follow the "shall be organized" or must-incorporate approaches of the Uniform Condominium Act and twenty states. The enactment of the Maryland Condominium Act in 1974 pre-dated by approximately three years approval of the Uniform Act by the National Conference, but there is some indication that the General Assembly nonetheless considered provisions of the Uniform Condominium Act thereafter. For instance, as enacted by the General Assembly in 1974, § 11–109(d)(2) of the Maryland Condominium Act stated that the council of unit owners shall have the power "[t]o sue and be sued, complain and defend in any court. . . ." 1974 Md. Laws Ch. 641. That subsection remained unchanged until 1980, when the General Assembly changed the provision to state that the council of unit owners has the power "[t]o sue and be sued, complain and defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium. . . ." 1980 Md. Laws Ch. 681. Three years earlier, in 1977, the Uniform Condominium Act was approved, and its § 3–102(4) provided that the unit owners' association may "institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or 2 or more unit owners on matters affecting the condominium. . . ." Unif. Condo. Act § 3–102 (1977). Thus, it appears that the General Assembly patterned the current version of § 11–109(d)(4) on the Uniform Act. *See Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 580, 948 A.2d 11, 24 (2008) ("In 1981, as a result of the criticisms of multistory apartment building conversions, the Commission proposed extensive restructuring and modification of the Condominium Act, which 'drew from a number of sources including the Uniform Condominium Act,' in order to abate concerns

with regulations); *Damron v. Univ. Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402, 405–06 (1988) (holding that, although the condominium statute does not explicitly authorize unit owners' association to bring suit, the association is authorized to seek attorney's fees as a collectible expense "lawfully agreed upon").

regarding apartment-to-condominium conversions and operations.").

That the General Assembly, however, has not adopted the "shall be organized" or must-incorporate approach of the Uniform Act is illuminating here because § 11–109 has been amended nineteen times since its original enactment in 1974. Twenty other states adopted one or the other of those two approaches, including Alabama, whose Legislature explained its adoption of the must-incorporate approach in 1990 in a commentary section to its statutory provision:

> The requirement that the association be incorporated is a significant departure from prior Alabama law which at section 36–8–9 provides that "the association may be incorporated or unincorporated." The drafters of the present act elected to change this practice and follow the example of several other states which require incorporation. There were three reasons for requiring incorporation. First, it is considered desirable to help insulate those unit owners serving as directors from personal liability for the acts of the association. Secondly, the committee determined that it was desirable to provide associations with access to the well-developed body of corporate law existing in the state of Alabama. Finally, incorporation facilitates the dealings between the association and third parties. This is especially important in the instance where the association is to hold title to the common property.

Ala.Code § 35–8A–301 cmt. 2 (2008). That our General Assembly chose not to follow the Uniform Condominium Act's "shall be organized" language or the must-incorporate approach and the rationales of Alabama and other legislatures supporting such an approach, opting instead for the discretionary choice of incorporating (or not) a council of unit owners, militates against Appellees' contention that the "either incorporated as a nonstock corporation or unincorporated" language of § 11–109(d) provides for an absolute dichotomy between incorporated—and therefore subject entirely to Maryland general corporation law, including as interpreted in

*Dual Inc.* and *Stein*—and unincorporated councils of unit owners.

### 3. Functions of Condominium Associations Generally

 We consider also § 11–109's language in the context of the presumed general intent to provide for continuity of efficient and effective governance for condominium communities. The most central purpose of such communities, and the purpose no doubt recognized by the General Assembly in enacting Maryland's Condominium Act, is for the development *and governance* of communities in which generally unrelated persons share property and interests in such a way as to maximize the value to each. *See Anderson,* 404 Md. at 574, 948 A.2d at 20 ("The term condominium may be defined generally as a system for providing separate ownership of individual units in multiple-unit developments. In addition to the interest acquired in a particular apartment, each unit owner also is a tenant in common in the underlying fee and in the spaces and building parts used in common by all the unit owners." (quoting *Ridgely Condo. Ass'n, Inc. v. Smyrnioudis,* 343 Md. 357, 358–59, 681 A.2d 494, 495 (1996))). As outlined in Rohan and Reskin's Condominium Law treatise,

> Common interest communities, including condominium projects, generally have property and interests shared by a group of unrelated persons. This circumstance demands some form of shared control or management so that shared interests are respected and the property is put to its best use and not left to deteriorate. The association is created to take on this vital task of governing the project for the benefit of all unit owners.
>
> All unit owners in the project comprise the association.
>
> . . .
>
> The association's goals are to protect the property, provide for security and other services, enhance the desirability of living in the project, and maintain the harmony of the project for the economic and personal well-being of the unit owners. With this in mind, the association may be viewed

as a microcosmic parallel to a public government. The association is, in essence, a private government.

Private associations often supply various public goods and services, such as garbage disposal, recreational areas, and security services, which are traditionally operated by public government. Associations may be more efficient than government in furnishing these goods and services to the community.

In order for an association to be effective, individual autonomy must be sacrificed to the association to the extent it is inconsistent with the needs of the project. For these reasons, the condominium statute or condominium instruments, or both, grant certain powers to the association. These powers, which are often exercised through the board, may include the power to levy and collect assessments, employ personnel, obtain insurance, own units, have access to units, dedicate common elements to a public body, grant easements and adopt rules and regulations covering the details of operation and use of the property.

. . .

Unit owners often engage in certain acts that violate the order and design of a condominium project. An association may encounter unit owners who remodel their balconies without permission, play excessively loud music or keep prohibited pets. The condominium instruments, including the bylaws and rules and regulations of the board, usually address these matters. The possibility of infractions by unit owners requires that enforcement provisions be set forth in the condominium instruments. The board must act as the project's police and judge. The unit owners may also seek to enforce the provisions of the condominium instruments against the association.

Patrick J. Rohan & Melvin A. Reskin, Real Estate Transactions: Condominium Law and Practice § 1.06 (2008) (citations omitted). As Rohan and Reskin aptly note, the condominium association (the council of unit owners) serves as the organizing and governing body at the heart of condominium communi-

ties. The council is the governing authority charged with ensuring that the community and the individual owners within that community conform to the plans and goals of the condominium instruments and other applicable authority. One of the means that must be available in order for the council of unit owners to exercise its authority, therefore, is the right to sue and be sued on behalf of itself (or two or more unit owners) on matters affecting the condominium. *See* Md.Code, Real Property § 11–109(a) ("The affairs of the condominium shall be governed by a council of unit owners...."). Thus, in light of the general intent of providing for continuity of efficient and effective governance in condominium communities, we are inclined to interpret § 11–109 as providing for a "dormant-entity" status for ostensibly incorporated councils of unit owners; under this interpretation, we read § 11–109's language, stating that a council of unit owners "even if unincorporated, is constituted a legal entity for all purposes" having the power "[t]o sue and be sued ... in its own name on behalf of itself or two or more unit owners on matters affecting the condominium", as contemplating that if an incorporated council of unit owners forfeits its corporate charter, it defaults to the status of an unincorporated association, with the right to sue and be sued intact, as provided in § 11–109(d)(4). Md.Code, Real Property § 11–109(a), (d) [7]; *see also Anderson*, 404 Md. at 577 n. 14, 948 A.2d at 22 n. 14 ("The Maryland Condominium Act 'not only provides the legislative framework for establishing a condominium regime, but also

---

**7.** Providing for continuity in efficient and effective governance is important because it is vital for the unincorporated council of unit owners to retain its ability to sue in the cases such as the present one where it might prove too costly for as little as 2 individual unit owners to assume, in their individual capacities, litigation bills for matters affecting common areas. Further, the individual unit owners, as the only other persons with arguable standing to bring suit, nevertheless might be found to lack standing to bring suit on matters affecting only common areas. *See Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 50 A.D.3d 503, 858 N.Y.S.2d 109, 110 (2008) ("Plaintiff has standing to seek relief for damage and defects to its own units only and not for injury to the common elements of the subject building ....") (citations omitted).

the authority by which a condominium development can maintain and sustain its existence' and 'the scope and duties of condominium development and ownership in Maryland.'" (quoting *Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks,* 387 Md. 683, 716–17, 878 A.2d 528, 549 (2005))).

## III.

An issue left looming in this case regards the applicable statute of limitations and Pines Point Marina's ability to amend its complaint to reflect that it should (and could) have brought the action as an unincorporated association. According to the holding in this case, if an incorporated council of unit owners forfeits its corporate charter, it becomes, by default, an unincorporated association with the power to sue and be sued under Real Property § 11–109. The underlying cause of action nonetheless remains subject to any applicable statute of limitations, in this case Maryland's general three year statute of limitations. Md.Code, Courts & Judicial Proceedings § 5–101.

■ Pines Point Marina filed its original complaint on 30 August 2006, presumably within three years of learning on or about 4 October 2003 of the loosening of the floating docks. The council, however, filed the complaint under the name "Pines Point Marina, A Condominium Council of Unit Owners, Inc." At all times in the litigation in the Circuit Court, Pines Point Marina pursued the matter as "Pines Point Marina, A Condominium Council of Unit Owners, Inc.", including in an amended complaint filed on 26 October 2007. Also according to the record, there is no indication that the council of unit owners sought, within three years of 4 October 2003, to amend the complaint to sue as an unincorporated association. For that matter, Pines Point Marina did not seek to amend the complaint at any time to sue as an unincorporated association.[8]

---

8. Pines Point Marina points to the fact that, in both its original and amended complaints, it alternatively pleaded that it sued "on behalf of [the] unit owners" of the condominium. It attached as an exhibit a list of all persons owning units and undivided percentage interests in the

Thus, whether Pines Point Marina's claim may be maintained, it seems, depends on whether it yet may amend its complaint to sue as an unincorporated association, and whether such amendment may be recognized as relating back to the original complaint filed on 30 August 2006. Maryland Rule 2–341 provides, in pertinent part,

> (a) Without Leave of Court. A party may file an amendment to a pleading without leave of court by the date set forth in a scheduling order or, if there is no scheduling order, no later than 30 days before a scheduled trial date. Within 15 days after service of an amendment, any other party to the action may file a motion to strike setting forth reasons why the court should not allow the amendment. If an amendment introduces new facts or varies the case in a material respect, an adverse party who wishes to contest new facts or allegations shall file a new or additional answer to the amendment within the time remaining to answer the original pleading or within 15 days after service of the amendment, whichever is later. If no new or additional answer is filed within the time allowed, the answer previously filed shall be treated as the answer to the amendment.
>
> (b) With Leave of Court. A party may file an amendment to a pleading after the dates set forth in section (a) of this Rule only with leave of court. If the amendment introduces new facts or varies the case in a material respect, the new facts or allegations shall be treated as having been denied by the adverse party. The court shall not grant a continuance or mistrial unless the ends of justice so require.
>
> (c) Scope. An amendment may seek to (1) change the nature of the action or defense, (2) set forth a better statement of facts concerning any matter already raised in a pleading, (3) set forth transactions or events that have occurred since the filing of the pleading sought to be

common elements. This notwithstanding, the caption of the case emphasized the name and address of the corporation as the plaintiff and the suit clearly was mounted by the corporation, even in its representative capacity for the unit and boat slip owners.

amended, (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long as one of the original plaintiffs and one of the original defendants remain as parties to the action, (6) add a party or parties, (7) make any other appropriate change. Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties.

It appears from the current record that, at the time Appellees' motions for summary judgment were granted, Pines Point Marina would not have needed leave of court to amend its complaint. The initial Scheduling Order entered in this case by the Circuit Court stated that "[a]ll motions, including Motions in Limine, and all amendments to pleadings must be filed FORTY FIVE (45) DAYS prior to the Trial Date." (emphasis in original). The first scheduled trial date was 24 September 2007, which would have required any amended complaint to be filed, under Md. Rule 1–203, no later than 10 August 2007. The trial date was rescheduled to 22 January 2008, which then would have required an amended complaint to be filed by 7 December 2007.

On 26 October 2007, Pines Point Marina filed an amended complaint to add a negligence claim against Rehak and eliminate North American Specialty Insurance Company as a defendant. During the 29 October 2007 summary judgment motions hearing, the Circuit Court acknowledged Pines Point Marina's right to file the amended complaint as within the prescribed time limitations of the Scheduling Order and the Rules. At the conclusion of the 29 October hearing, however, the Circuit Court stated that it was granting Appellees' motions for summary judgment on the ground that Pines Point Marina was barred from bringing the action by the applicable statute of limitations because, as a corporation, it failed to revive its corporate standing before the limitation period ran on or about 4 October 2006.

Accepting, for present purposes, the material facts as alleged or revealed through discovery, the applicable stat-

ute of limitations expired on Pines Point Marina's claims on or about 4 October 2006. Therefore, an amendment to the complaint subsequent to that date seeking to sue as an unincorporated association would have to relate back, under Maryland case law, to the original complaint filed on 30 August 2006 in order to be viable on its face.[9] It is well-settled under Maryland law that the

> institution of a suit arrests the running of the statute of limitations, and the general rule is that, where the period of limitations has not elapsed before the suit was brought, a mere amendment of the declaration, *when the cause of action remains the same,* will not warrant the filing of a plea of limitations, even though the statutory period has intervened between the time when the cause of action accrued and the date of making the amendment.

*State ex rel. Zier v. Chesapeake Beach Ry. Co.,* 98 Md. 35, 40, 56 A. 385, 387 (1903) (emphasis in original) (as applied in *Crowe v. Houseworth,* 272 Md. 481, 325 A.2d 592 (1974); *Nam v. Montgomery County,* 127 Md.App. 172, 732 A.2d 356 (1999); *Univ. Nursing Home, Inc. v. R.B. Brown & Assocs., Inc.,* 67 Md.App. 48, 506 A.2d 268 (1986); *Smith v. Gehring,* 64 Md.App. 359, 496 A.2d 317 (1985); *Kirgan v. Parks,* 60 Md.App. 1, 478 A.2d 713 (1984); *Mack Trucks, Inc. v. Webber,* 29 Md.App. 256, 347 A.2d 865 (1975)). It also has been held that

> the filing within the period of limitations of an assertion of a claim which is deficient or wrong in form or otherwise technically defective will toll the statute of limitations to the

---

**9.** With specific regard to the 26 October 2007 amended complaint, it appears that the amended complaint was a nullity because of the circumstances under which it was filed. In the original complaint, Pines Point Marina held itself out as bringing suit as a corporation in good standing. At the time, its corporate charter was forfeit. In the 26 October 2007 amended complaint, Pines Point Marina reasserted its position as a corporation in good standing, after its charter was revived, but also after the expiration of the applicable statute of limitations. These occurrences are indistinguishable factually from this Court's holdings in *Dual Inc.,* 383 Md. 151, 857 A.2d 1095, and *Stein,* 358 Md. 670, 751 A.2d 504.

extent that the filing of a correct assertion of claim after the expiration of the statute will relate back to and validate the original assertion of claim, as long as the corrected statement does not introduce a new cause of action or a new theory of liability or new parties.

*E. Air Lines, Inc. v. Phoenix Sav. & Loan Ass'n, Inc.,* 239 Md. 195, 201, 210 A.2d 515, 518 (1965) (citations omitted).

■ In *Dual Inc.* and *Stein* this Court made it clear that, under principles of general corporation law, a statute of limitations is not tolled by the filing of an action in the name of a corporation whose charter is forfeit. *Dual Inc.,* 383 Md. at 166, 857 A.2d at 1103; *Stein,* 358 Md. at 671, 751 A.2d at 504–05. And in *Wright,* we articulated that "th[e] liberal treatment [allowed for amending complaints] does not relieve a litigant of the responsibility to amend her declaration." *Wright v. Commercial & Sav. Bank,* 297 Md. 148, 159, 464 A.2d 1080, 1086 (1983). Amendment to sue as an unincorporated association and the potential for that to relate back to the original complaint was not addressed in the trial court at the time summary judgment was entered in favor of Appellees. Because of our holding here as to the unique posture of a condominium council of unit owners whose corporate charter is forfeit, vis a vis general corporation law, it is only fair to remand this case to the Circuit Court for further proceedings [10] not inconsistent with this Opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**

---

10. "The determination to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge." *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443–44, 795 A.2d 715, 720 (2002).